JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELANIE BARSELL, an individual, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> URBAN OUTFITTERS, INC., a ) <br> Pennsylvania Corporation; PATRICIA ) <br> REDDING, an individual, and DOES 1 ) <br> through 50, inclusive, ) <br> ) <br> ) <br> Defendants. ) <br> ) <br> ) | CASE NO. CV 09-02604 MMM (RZx) <br><br> ORDER GRANTING PLAINTIFF'S MOTION TO REMAND CASE TO LOS ANGELES SUPERIOR COURT |

On March 5, 2009, plaintiff Melanie Barsell filed a complaint against defendants Urban Outfitters, Inc. ("Urban Outfitters") and Patricia Redding in Los Angeles Superior Court. Barsell's complaint alleges five state law causes of action against Urban Outfitters, and a claim for intentional infliction of emotional distress against Redding. Urban Outfitters removed the action to federal court on April 15, 2009, asserting that the matter falls within the court's diversity jurisdiction under 28 U.S.C. §§ 1441(a) and 1332(a). On May 7, 2009, Barsell filed a motion to remand. The motion is currently on calendar for hearing on July 6, 2009 at 10:00 a.m. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds

that this matter is appropriate for decision without oral argument. The hearing scheduled for July 6, 2009 is hereby vacated and taken off calendar.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Allegations in Barsell's Complaint

Barsell, who suffers from chronic depression,[1] was hired by Urban Outfitters as a operations supervisor on July 21, 2008.[2] At the time, she was taking anti-depressant medication.[3] In August 2008, Barsell informed assistant store manager Jane Yamamoto that she suffered from chronic depression and was taking anti-depressants.[4] She said she intended to stop taking the medication soon.[5] In October 2008, Barsell discontinued the medication and advised her supervisors of this fact.[6]

One week after stopping the medication, Barsell experienced severe depression and was unable to work for one day.[7] Barsell's husband called Redding, the store manager, and told her that Barsell could not work that day due to depression.[8] When Barsell returned to work, she was asked to meet with Yamamoto and Redding.[9] Redding gave Barsell a document that purportedly recorded days on which Barsell had been late for work.[10] Barsell disputed that she had been late,

---

[1] Complaint, ¶ 10.

[2] *Id.*, ¶ 9.

[3] *Id.*, ¶ 10.

[4] *Id.*, ¶ 11.

[5] *Id.*, ¶ 12.

[6] *Id.*, ¶ 13.

[7] *Id.*, ¶ 14.

[8] *Id.*, ¶ 15.

[9] *Id.*, ¶ 16.

[10] *Id.*, ¶ 17.

1 and added that she had no history of discipline.[11] Redding gave Barsell a written warning for
2 tardiness; Barsell alleges that Redding issued the warning in retaliation for Barsell's inability to
3 work the previous day due to depression.[12]

4     On November 14, 2008, Barsell was admitted to the hospital for severe depression.[13]
5 Barsell's husband notified Urban Outfitters of this fact.[14] On November 17, Redding called
6 Barsell's husband and left a voicemail message, requesting that he contact her regarding Barsell.[15]
7 Redding purportedly stated that she and Barsell's husband "need[ed] to discuss what we are going
8 to do with her."[16] On November 19, Barsell's husband called Redding, and Redding advised him
9 that Urban Outfitters was terminating Barsell's employment due to missed work.[17]

10     Barsell's complaint pleads five causes of action against Urban Outfitters: (1) disability
11 discrimination in violation of California Government Code § 12940(a); (2) failure reasonably to
12 accommodate disability in violation of Government Code § 12940(m); (3) failure to engage in a
13 good faith interactive process in violation of Government Code § 12940(n); (4) wrongful
14 termination in violation of public policy; and (5) intentional infliction of emotional distress. The
15 complaint alleges a claim against Redding for intentional infliction of emotional distress as well.

16     **B.**    **Urban Outfitters' Notice of Removal**

17     Urban Outfitters filed a notice of removal on April 15, 2009, asserting that the matter fell
18 within the court's diversity jurisdiction under 28 U.S.C. §§ 1441(a) and 1332(a). Urban
19 Outfitters asserts that it is a Pennsylvania corporation with its principal place of business in

---

[11] *Id.*

[12] *Id.*

[13] *Id.*, ¶ 18.

[14] *Id.*, ¶ 19.

[15] *Id.*, ¶ 20.

[16] *Id.*

[17] *Id.*, ¶ 21.

Pennsylvania, and that Barsell and Redding are both citizens of California.[18] Urban Outfitters contends that the court should disregard Redding's citizenship because she is a sham defendant who has been joined only to defeat diversity jurisdiction.[19]

## II. DISCUSSION

### A. Legal Standard Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute. See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000. See 28 U.S.C. §§ 1441(a), (b); see also 28 U.S.C. §§ 1331, 1332(a). Only state court actions that could originally have been filed in federal court may be removed. 28 U.S.C. § 1441(a); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), and *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (citing *Libhart*, 592 F.2d at 1064). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

---

[18] Notice of Removal at 3. Barsell's complaint identifies both Barsell and Redding as residents of California, but does not alleged their citizenship.

[19] *Id.*

4

**B.     Whether the Case Was Properly Removed under 28 U.S.C. § 1332**

"[J]urisdiction founded on [diversity] requires that parties be in complete diversity and the amount in controversy exceed $75,000." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); see 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States"). Federal courts have jurisdiction only where there is complete diversity: the plaintiff's citizenship must be diverse from that of each named defendant. 28 U.S.C. §§ 1332(a)(1), 1332(c)(1); see *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 n. 3 (1996); see also *Cook v. AVI Casino Enters., Inc.*, No. 07-15088, 2008 WL 4890167, *3 (9th Cir. Nov. 14, 2008) (Unpub. Disp.) ("We have jurisdiction only if Cook, a resident of California, has citizenship which is diverse from that of every defendant," citing *Lewis*, 519 U.S. at 68).

**1.     Standard Governing Fraudulent Joinder**

Because Barsell and Redding are both California citizens, there is complete diversity only if the court disregards Redding's citizenship. Urban Outfitters contends there is no possibility Barsell can establish Redding's liability for intentional infliction of emotional distress, and argues that it has named her as a defendant solely to avoid diversity jurisdiction.

"It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citing *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 & n. 1 (9th Cir. 1988); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). A non-diverse defendant is considered to have been fraudulently joined, and her citizenship can be disregarded, "[i]f the plaintiff fails to state a cause of action against the defendant, and the failure is obvious according to the settled rules of the state." *Hamilton Materials, Inc. v. Dow Chemical Co.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting *McCabe*, 811 F.2d at 1339). Because a court must resolve all doubts against removal, in determining whether joinder is fraudulent, it "must resolve all material ambiguities in state law in plaintiff's favor." *Macey v. Allstate Property and Cas. Ins. Co.*, 220 F.Supp.2d 1116, 1117 (N.D. Cal. 2002) (citing *Good v. Prudential*, 5 F.Supp.2d 804, 807 (N.D. Cal.

5

1998)). Thus, "[i]f there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendants[,] the court must remand." *Id.*

"Fraudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials*, 494 F.3d at 1206 (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)).

### 2. Whether Workers' Compensation Is the Exclusive Remedy for Barsell's Intentional Infliction of Emotional Distress Claim

Urban Outfitters argues that workers' compensation provides the exclusive remedy for Barsell's intentional infliction of emotional distress claim. Under California law, workers' compensation provides the exclusive remedy for an intentional infliction of emotional distress claim that is based solely on alleged personnel activity. See CAL. LAB. CODE § 3601(a) ("Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation, pursuant to the provisions of this division is . . . the exclusive remedy for injury or death of an employee against any other employee of the employer acting within the scope of his or her employment"); *Cole v. Fair Oaks Fire Protection District*, 43 Cal.3d 148, 160 (1987) ("[W]hen the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability"); *Accardi v. Superior Court*, 17 Cal.App.4th 341, 352 (1993) ("Emotional distress caused by misconduct in employment relations involving, for example, promotions, demotions, criticism of work practices, [or] negotiations as to grievances, is a normal part of the employment environment. A cause of action for such a claim is barred by the exclusive remedy provisions of the workers' compensation law"), disapproved of on other grounds, *Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798, 802 (2001).

"The Legislature . . . did not intend that an employer be allowed to raise the exclusivity rule for the purpose of deflecting a claim of discriminatory practices[, however]. Thus, a claim

for emotional and psychological damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices." *Accardi*, 17 Cal.App.4th at 352-53 ("Accardi's cause of action for emotional distress relates to the same set of facts as alleged in the claim of discrimination. Her discrimination claims are based upon allegations of actions outside the normal part of her employment environment. Therefore, her claim for discrimination is not barred by the exclusivity provisions of workers' compensation law" (internal citations omitted)); see also *Fretland v. County of Humboldt*, 69 Cal.App.4th 1478, 1492 (1999) ("[W]ork-related injury discrimination is not a normal risk of the compensation bargain. . . . Thus, Fretland's emotional distress claims are not barred by the exclusivity rule to the extent they seek emotional distress damages for the alleged work-related injury discrimination"); *Watson v. Department of Rehabilitation*, 212 Cal.App.3d 1271, 1287 (1989) ("[T]he allegations and evidence in this case do not involve conduct which can be expected normally to occur in the workplace and which is part of the employment risk. Prohibited racial and age discrimination are against the law and policy of this state. Such discrimination is not a normal incident of employment, no less for an employee of the state than for one employed in the private sector. We therefore conclude that Watson is not limited to worker's compensation for her injuries . . ."). Here, the conduct forming the basis for Barsell's intentional infliction of emotional distress claim is the written warning Redding issued, allegedly in retaliation for missing work due to depression. Because this claim is based on allegations of disability discrimination, there is a non-fanciful possibility that the workers' compensation exclusivity provisions do not bar Barsell's claim against Redding.

Urban Outfitters next argues that Barsell cannot state a claim against Redding for intentional infliction of emotional distress because under the workers' compensation statute, there is a management privilege that shields a manager from individual liability for personnel decisions. Urban Outfitters misreads the case on which it relies – *Kacludis v. GTE Sprint Communications Corp*, 806 F.Supp. 866, 872 (N.D. Cal. 1992). The *Kacludis* court held that an employee could not state a slander claim against his manager based on disparaging comments the manager to others. The privilege applied was that set forth in California Civil Code § 47(c), which defines

7

privileged communications in the defamation context;[20] workers' compensation law was not involved. See *id*. at 872. Although the court in *Kacludis* discussed workers' compensation exclusivity immediately prior to discussing the § 47(c) privilege, the privilege it applied was not based on workers' compensation law, and Urban Outfitters' invocation of a "manager's privilege under worker's compensation preemption" is misplaced.[21]

"There is no authority for the proposition that [a manager] may not be liable in tort for the intentional infliction of emotional distress providing all of the elements of that tort are satisfied. Indeed, California case law is replete with cases where conduct of the employer or one of its

---

[20] Section 47(c) provides:
"A privileged publication or broadcast is one made . . . [i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information. This subdivision applies to and includes a communication concerning the job performance or qualifications of an applicant for employment, based upon credible evidence, made without malice, by a current or former employer of the applicant to, and upon request of, one whom the employer reasonably believes is a prospective employer of the applicant. This subdivision authorizes a current or former employer, or the employer's agent, to answer whether or not the employer would rehire a current or former employee. This subdivision shall not apply to a communication concerning the speech or activities of an applicant for employment if the speech or activities are constitutionally protected, or otherwise protected by Section 527.3 of the Code of Civil Procedure or any other provision of law."

[21] Opp. at 6. The court in *Kacludis* dismissed plaintiff's claim for intentional infliction of emotional distress based on workers' compensation preemption. See *Kacludis*, 806 F.Supp. at 872 n. 8 ("Kacludis argues that his sixth cause of action avoids [dismissal under workers' compensation exclusivity], as it involves emotional distress allegedly inflicted after his termination. However, the caselaw is clear that injuries occurring after termination but flowing from the employment relationship are within the ambit of workers' comp" (citations omitted)). In reaching this conclusion, the court applied the general rule that, under California Labor Code § 3601(a), workers' compensation provides the exclusive remedy for an intentional infliction of emotional distress claim that is based solely on alleged personnel activity. Although some cases applying workers' compensation exclusivity have referred to a "managerial privilege," this privilege is not, as Urban Outfitters appears to suggest, distinct from the general exclusivity rule. As noted earlier, the exclusivity rule does not apply to allegations of illegal discriminatory practices. See, e.g., *Cole*, 43 Cal. 3d at 160.

agents or employees is so outside the bounds of conduct tolerated by a decent society that it may give rise to a claim for intentional infliction of emotional distress." *Calero v. Unisys Corp.*, 271 F.Supp.2d 1172, 1178 (N.D. Cal. 2003); see also *Toran v. Jones*, ,No. H025568, 2003 WL 21185126, *6 (May 19, 2003) ("Jones argues that the cause of action for intentional infliction of emotional distress was properly dismissed because she is protected by a managerial privilege against tort liability for conduct relating to employment decisions. (*Kacludis v. GTE Sprint Comm. Corp.* (N.D.Cal.1992) 806 F.Supp. 866; *Aalgaard v. Merchants Nat. Bank, Inc.* (1990) 224 Cal.App.3d 674, 274 Cal.Rptr. 81.)  Neither of these cited cases concerns a cause of action based on discriminatory conduct for which an individual defendant can be liable under FEHA. We are unaware of any case holding that the managerial privilege applies to insulate a defendant from liability for intentional conduct in violation of the public policies contained in FEHA").[22] Consequently, Urban Outfitters' reliance on worker's compensation exclusivity does not establish that Redding has been fraudulently joined.  See, e.g., *Gibson v. American Airlines*, No. C 96-1444 FMS, 1996 WL 29632, *5 (N.D. Cal. 1996) (finding that a supervisor named in an intentional infliction of emotional distress claim was not fraudulently joined, and observing that "[a]lthough termination and even employer misconduct are a normal part of the employment relationship, *Accardi* establishes that discriminatory conduct exceeds the risks inherent in the employment relationship and, as such, is not subject to the exclusive remedy provisions of the Workers' Compensation Act").

> **3.  Whether There Is a "Non-Fanciful" Possibility That Barsell's Complaint States an Intentional Infliction of Emotional Distress Claim**

To state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) extreme and outrageous conduct by defendants with the intention of causing, or reckless disregard for the probability of causing, emotional distress; (2) the suffering of severe or extreme

---

[22]District courts may rely on unpublished state court decisions as persuasive authority. See, e.g., *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220  n. 8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value").

emotional distress; and (3) the fact that the outrageous conduct actually and proximately caused the distress. *Conley v. Roman Catholic Archbishop of San Francisco*, 85 Cal.App.4th 1126, 1133 (2000) (citing *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593 (1979) ("The elements of a prima facie case of intentional inflection of emotional distress consist of: (1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) [the] suffering of severe or extreme emotional distress by plaintiff; and (3) [a finding that] plaintiff's emotional distress is actually and proximately the result of defendant's outrageous conduct"); *Wilkens v. National Broadcasting Co.*, 71 Cal.App.4th 1066, 1087 (1999) (same); *Symonds v. Mercury Savings and Loan Ass'n.*, 225 Cal.App.3d 1458, 1468 (1990) (same). The defendant's conduct "must . . . be directed at the plaintiff or [take place] in the presence of the plaintiff." *Smith v. Pust*, 19 Cal.App.4th 263, 274 (1993).

The complaint alleges that Redding acted with intent to cause Barsell to suffer severe emotional distress, and that her conduct caused such distress.[23] Urban Outfitters argues, however, that the complaint does not allege sufficiently outrageous conduct by Redding to state an intentional infliction of emotional distress claim. The only actions Redding allegedly directed at Barsell were (1) presenting Barsell with a false report regarding her tardiness, and giving her a written warning based on the report; and (2) informing Barsell's husband that Barsell's employment had been terminated while Barsell was hospitalized for depression.[24]

"A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 80 (1996). Personnel management activity includes "actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or non-

---

[23]Complaint, ¶¶ 55-56.

[24]The court does not consider Redding's alleged statement to Barsell's husband that "we need to discuss what we are going to do with her," as this statement was not directed at Barsell but at her husband.

10

assignment of supervisory functions, deciding who will and who will not attend meetings, [and] deciding who will be laid off." *Id.* at 64-65. "[A] claim of intentional infliction of emotional distress [can be asserted, however,] '[w]here the behavior goes beyond the act of termination'" or other management activity. *Dagley v. Target Corp., Inc.*, No. CV 09-1330-VBF(AGRx), 2009 WL 910558, *3 (C.D. Cal. Mar. 31, 2009) (quoting *Gibson*, 1996 WL 329632 at *4); see also *Graves v. Johnson Control World Services, Inc.*, No. C-05-1772 SC, 2006 WL 618796 *11 (N.D. Cal. Mar. 13, 2006) ("In response, Johnson Control argues that Graves cannot prevail on this cause of action because, as a matter of law, personnel management decisions are not 'outrageous conduct beyond the bounds of human decency.' . . . The court in *Janken* . . . note[d] that the remedy for personnel management decisions, even where improperly motivated, is 'a suit against the employer for discrimination.' . . . However, Defendant overstates the reach of the Court's decision in *Janken* to the extent that it argues that any decision affecting personnel management is not actionable under an intentional infliction of emotional distress theory, no matter what the motivation. . . . That proposition is far too broad for the *Janken* decision to bear, and, in fact, courts considering intentional infliction of emotional distress claims have clearly ruled that such claims can be brought where the 'distress is engendered by an employer's illegal discriminatory practices,'" citing *Accardi*, 17 Cal.App.4th at 353, and *Hamilton v. Signature Flight Support Corp.*, No. C-05-409, 2005 WL 1514127, *7 (N.D. Cal. June 21, 2005)); *Rojo v. Kliger*, 52 Cal.3d 65, 81 (1990) (stating that an "employer's discriminatory actions may [also] constitute . . . outrageous conduct under a theory of intentional infliction of emotional distress"); *Murray v. Oceanside Unified School Dist.*, 79 Cal.App.4th 1338, 1362 (2000) (stating, in a case involving discrimination based on sexual orientation, that "a claim for emotional and psychological damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices"); *Accardi*, 17 Cal.App.4th at 353 (permitting a claim for intentional infliction of emotional distress based on allegations of sex discrimination to go forward because the claim was "founded upon actions that are outside the normal part of the employment environment and violate this state's policy against sex discrimination"); *Fisher v. San Pedro Peninsula Hospital*, 214 Cal.App.3d 590, 618 (1990) ("Given an employee's fundamental, civil

11

right to a discrimination free work environment . . . , by its very nature, sexual harassment in the work place is outrageous conduct as it exceeds all bounds of decency usually tolerated by a decent society [and will,] . . . if properly pled, . . . constitute the outrageous behavior element of a cause of action for intentional infliction of emotional distress against Dr. Tischler").

"Whether … alleged behavior is sufficiently extreme as to constitute 'outrageous' behavior is properly determined by the fact finder after trial or possibly after discovery upon a motion for summary judgment." *Angie M. v. Superior Court*, 37 Cal.App. 4th 1217, 1226 (1995). Thus, in other cases in which defendants have argued that a supervisor's alleged conduct was not sufficiently outrageous to support an intentional infliction of emotional distress claim, district courts applying the fraudulent joinder standard have generally found a non-fanciful possibility of liability, even where plaintiff's claim appeared "relatively weak." See *Asurmendi v. Tyco Electronics Corp.*, No. C 08-5699 JF (PVT), 2009 WL 650386, *5 (N.D. Cal. Mar. 11, 2009). District courts have also granted motions to remand where the complaint failed to allege outrageous conduct, because it was possible that plaintiff could cure the deficiency by amendment. See *Burris v. AT&T Wireless, Inc.*, No. C 06-02904 JSW, 2006 WL 2038040, *2 (N.D. Cal. July 19, 2006) ("Cingular does not argue that Burris cannot assert a tort claim for emotional distress against his former supervisor as a matter of law. Rather, Cingular argues that Burris failed to state a claim for intentional infliction of emotional distress because he did not allege any extreme or outrageous conduct, a necessary element of this claim. . . . Although as currently ple[d], Burris has not alleged conduct which may be considered extreme or outrageous, Cingular has not demonstrated that, under California law, Burris would not be afforded leave to amend his complaint to cure this purported deficiency. Accordingly, Cingular failed to demonstrate that it is obvious under settled state law that Burris cannot prevail against Mr. Caniglia and thus has not demonstrated that this Court has subject matter jurisdiction").

As respects the termination of Barsell's employment, the complaint merely alleges that Redding communicated Urban Outfitters' decision to terminate Barsell's employment to her husband; it does not allege that Redding made the decision. While arguably, Barsell's husband could have delivered Redding's message to his wife in a time and manner that lessened its impact

on her condition, it is possible that a jury might conclude that communicating the termination decision while Barsell was hospitalized for depression was conduct that was outside the normal employment relationship and was designed to cause Barsell distress.

Additionally, Barsell alleges that Redding confronted Barsell with a document misrepresenting her work history one day after she had been unable to work due to depression. Although Barsell attempted to correct the misrepresentation, Redding issued a written warning regarding tardiness, allegedly in retaliation for Barsell's missing work due to depression. Particularly given Redding's alleged knowledge of Barsell's condition, the court cannot say that there is no possibility these facts state a claim against Redding. See *Hailey v. California Physicians' Service*, 158 Cal.App.4th 452, 473 (2007) ("The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity," quoting *McDaniel v. Gile,* 230 Cal.App.3d 363, 372 (1991)).

Cases considering the possibility that managers were fraudulently joined under similar circumstances support the court's analysis. In *Dagley*, 2009 WL 910558 at *3, plaintiff's supervisor terminated her while she was on medical leave. Plaintiff alleged an intentional infliction of emotional distress claim against the supervisor; her employer argued that the supervisor was fraudulently joined. The district court disagreed, and remanded the case. The court noted plaintiff's allegation that the supervisor "either knew or should have known that terminating [Plaintiff] at the age of 63, in her time of need, while she was disabled and/or suffering from a medical condition . . . was substantially certain to result in severe emotional distress." *Id.* (alteration original). The court reasoned:

> "'[A] claim of intentional infliction of emotional distress is possible '[w]here the behavior goes beyond the act of termination. . . .' *Gibson* [ ], 1996 WL 329632, at *4 [ ]. For example, if a plaintiff 'alleges conduct other than that inherent in terminating an employee', such as violating a 'fundamental interest of the employee . . . in a deceptive manner that results in the plaintiff being denied rights granted to other employees,' then a claim for intentional infliction of emotional distress is

13

    possible against a supervisor. *Id.* In *Gibson*, the court found that such a claim was possible against plaintiff's supervisor when the supervisor fired plaintiff in part for taking medical leave. *Id.* The *Gibson* court stated that plaintiff was denied the right to medical leave in a deceptive manner when other employees were given such a right. *Id.* In this case, Plaintiff alleges that she was terminated during her medical leave without any inquiry or warning from Ms. Hernandez. It is possible that a reasonable jury could find that Ms. Hernandez denied Plaintiff's right to medical leave in a deceptive manner by terminating her, and that therefore Plaintiff may possibly have a claim of intentional infliction of emotional distress against Ms. Hernandez. Ms. Hernandez therefore is not a sham defendant." *Id.*

Barsell's claim is stronger than that of the plaintiff in *Dagley*. There, the court emphasized the possibility that a factfinder might infer deception based on lack of inquiry or warning by plaintiff's supervisor. Here, an inference of deceptive conduct can more easily be drawn from Barsell's allegations; a factfinder could conclude that Redding intentionally confronted Barsell with a document misrepresenting her tardiness in order to build a record of discipline against her, and that Redding acted in retaliation for Barsell's assertion of a right to accommodation for her depressive disability. As in *Dagley*, Barsell alleges that Redding knew of her susceptibility to emotional distress. In cases alleging intentional infliction of emotional distress on the basis of less substantial allegations of deceptive conduct, district courts have declined to find that supervisors were fraudulently joined. See, e.g., *Asurmendi*, 2009 WL 650386 at *5 (holding that an allegation that a manager misrepresented that the purpose of plaintiff's meeting with another manager was to discuss molding rather than the employer's decision to terminate plaintiff "might be sufficient, in light of the totality of the circumstances, for a state court to find that [manager's] behavior was 'outrageous'").

    For the reasons stated, the court finds that there is a non-fanciful possibility a state court would conclude that Barsell's complaint states a claim against Redding. Accordingly, Redding is not a sham defendant. Because Barsell and Redding share California citizenship, the court cannot exercise diversity jurisdiction over this action. The court therefore grants Barsell's motion

to remand the case to state court.

### III.  CONCLUSION

For the reasons stated, Barsell's motion to remand is granted.  The clerk is directed to remand this action to Los Angeles Superior Court forthwith.

DATED: July 1, 2009

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE